**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HAUGEN AND CHRISTIAN GOLDSTON, on behalf of themselves, and all other Plaintiffs similarly situated, known and unknown, | ) ) ) ) | |
| | ) | Case No. 18-cv-07297 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Honorable Judge Elaine E. Bucklo** |
| | ) | |
| ROUNDY'S ILLINOIS, LLC D/B/A MARIANO'S | ) ) | **Magistrate Judge Sheila M. Finnegan** |
| | ) | |
| Defendant. | | |

## MOTION TO DECERTIFY FLSA COLLECTIVE ACTION

Defendant Roundy's Illinois, LLC d/b/a Mariano's ("Mariano's") moves to decertify the FLSA collective action that was conditionally certified by the Court on December 13, 2019. Named Plaintiffs James Haugen and Christian Goldston previously worked as People Services Managers ("PSMs") for Mariano's. Each Mariano's store employs one PSM, who is responsible for all human resources functions at the store, including recruiting, hiring, handling employee complaints and grievances, interacting with team members on the floor to ensure morale and satisfaction, ensuring HR policies are adhered to, and ensuring employees are properly certified and trained. Haugen and Goldston allege in their Complaint that they were improperly classified as exempt employees because they actually spent their time performing "customer service and general store clerk duties" rather than their HR-related duties.

Upon a limited record and applying the low burden established for the initial conditional certification stage, the Court conditionally certified the case as a collective action under the FLSA in December 2019. Just 28 out of more than 100 current and former PSMs opted to join the case.

Now that the parties have completed discovery, it is plain that Plaintiffs cannot satisfy their substantial burden of proving that they are similarly-situated, and the collective action must be decertified. This Motion is supported by the attached Memorandum in Support, along with the discovery materials filed with the Court.

Respectfully submitted,

*/s/ David K. Montgomery*
David K. Montgomery (Pro Hac Vice)
Jamie M. Goetz-Anderson (Pro Hac Vice)
JACKSON LEWIS P.C.
PNC Center, 26th Floor
201 E. Fifth Street
Cincinnati, OH 45202
Telephone: (513) 898-0050
Facsimile: (513) 898-0051
Email: david.montgomery@jacksonlewis.com
Email: Jamie.Goetz-Anderson@jacksonlewis.com

Christopher S. Griesmeyer (ARDC #6269851)
GREIMAN, ROME & GRIESMEYER, LLC
2 North LaSalle Street, Suite 1601
Chicago, IL 60602
Telephone: (312) 428-2750
Email: cgriesmeyer@grglegal.com

*Counsel for Defendant*

## <u>TABLE OF CONTENTS</u>

I.      **Introduction** ..............................................................................................................................3

II.     **Legal Standard** .........................................................................................................................4

III.    **Plaintiffs Cannot Prove That They Are Similarly Situated.** ........................................5

    A.  Plaintiffs Have Disparate Factual And Employment Settings ..........................................5

        1.  *The Degree To Which Plaintiffs Were Required To Perform Non-PSM Tasks Varies By Plaintiff, Store, and Supervisor; There Is No Common Practice To Bind The Class.* ...........6

        2.  *Plaintiffs Performed Different Duties.* ...................................................................8

    B.  Mariano's Defenses Require Individualized Inquiries. .................................................13

        1.  *The "Primary Duties" Test Requires Plaintiff-by-Plaintiff Analysis* ..................13

        2.  *"Discretion" Is Incapable of Representative Proof.* ...........................................16

    C.  Fairness and Procedural Concerns .................................................................................18

IV.    **Conclusion** ...............................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Barker v. U.S. Bancorp*, No. 3:15-cv-1641, 2017 U.S. Dist. LEXIS 162717,
  \*\* 11-12 (S.D. Cal. Oct. 2, 2017) ........................................................................................... 15

*Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119, 2016 U.S. Dist. LEXIS 91139,
  \* 34 (N.D. Cal. July 13, 2016) ............................................................................................... 14

*Blakes v. Ill. Bell. Tel. Co.*, No. 11 CV 336, 2013 U.S. Dist. LEXIS 176496,
  at \* 62 (N.D. Ill. Dec. 17, 2013) ........................................................................................... 18

*Bradford v. CVS Pharm., Inc.*, 308 F.R.D. 696, 702 (N.D. Ga. 2015) ...................................... 15

*Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) ................ 5, 6, 13, 18

*Dailey v. Groupon*, No. 11-C-05685, 2014 U.S. Dist. LEXIS 119190,
  \*\* 19-21 (N.D. Ill. Aug. 27, 2014) ......................................................................................... 14

*Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669, 671 (6th Cir. 2012) ............................. 5

*Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) ................................. 4

*Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1272-75 (M.D. Ala. 2004) ............................... 7

*Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 104 (N.D. Ill. 2013) ................................. 4, 13, 15, 16, 18

*Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 588 (E.D. La. 2008) ............................ 19

*McEarchen v. Urban Outfitters, Inc.*, No. 13-cv-3569, 2017 U.S. Dist. LEXIS 33335,
  \* 28 (E.D.N.Y. Mar. 7, 2017) ............................................................................................... 18

*Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) ............................. 8

*Pankaj Kumar v. Tech Mahindra (Americas) Inc.*, No. 4:16-cv-00905,
  2019 U.S. Dist. LEXIS 49081, \* 17 (E.D. Mo. Mar. 25, 2019) ....................................... 15, 19

*Persin v. Career Builders LLC*, No. 05-C-2347, 2005 U.S. Dist. LEXIS 23095,
  \* 6 (N.D. Ill. Sept. 21, 2005)................................................................................................. 5

*Russell v. Ill. Bell. Tel. Co.*, 721 F. Supp. 2d 804, 822 (N.D. Ill. 2010) ................................... 19

*Schaefer- LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012) ................................... 13

*Stevens v. HMSHost Corp.*, No. 10-cv-3571, 2014 U.S. Dist. LEXIS 119653,
  \*\* 21-22 (E.D.N.Y. Aug. 27, 2014) ..................................................................................... 19, 20

## Statutes

29 U.S.C. 216(b) .......................................................................................................................... 4

## Regulations

29 C.F.R. § 541.200(a)(2)-(3) .................................................................................................... 13

29 C.F.R. § 541.202(b) ............................................................................................................... 16

29 C.F.R. § 541.203(e).......................................................................................................... 16, 17

29 C.F.R. § 541.700(a)................................................................................................................ 14

29 C.F.R. § 541.700(b) ............................................................................................................... 14

## BRIEF IN SUPPORT OF MOTION TO DECERTIFY

### I.    Introduction

Plaintiffs contend that this FLSA misclassification case can be tried as a collective action because all PSMs perform the same, mostly non-PSM duties such as cashiering and bagging groceries. This contention, however, was completely refuted in discovery. Haugen himself testified that he spent just 10% of his time on these tasks at one store where he worked as a PSM.

Instead, the PSMs who were deposed confirmed they performed vastly different day-to-day duties and spent varying amounts of their work time on non-PSM tasks. Those differences are highlighted by the testimony of Opt-In Plaintiffs Dolores Garcia and Thomas Ignoffo. Garcia directly refuted the primary allegation of the Complaint when she swore that she spends almost all of her work time performing the human resources functions listed in the PSM job description-recruiting and interviewing, counseling, managing training, scheduling, boosting store morale, and acting as a "trouble shooter" with respect to employee concerns.[1] She devotes most of her time to successfully recruiting and hiring "best fit" candidates to staff her store. Garcia creates recruiting materials and develops outside relationships in order to find quality candidates, and she prides herself on identifying and advancing candidates for hire who she determines are a "good fit" for the store. Garcia does not work the cash register or bag groceries.

According to Ignoffo, the duties he performed as a PSM bear almost no resemblance to Garcia's job. Indeed, he claimed that he spent the majority of his work time (50-70%) performing non-PSM Duties like operating a cash register and bagging groceries- duties that Garcia never performs. And while he admitted to sometimes performing PSM Duties, he claimed that he performed them very differently than Garcia. Most notably, with respect to hiring, Ignoffo claimed

---

[1] Mariano's maintains a position description for the PSM position ("Position Description"). *See* <u>Doc. 40-3</u>. As used in in this motion, "PSM Duties" refers to the human resources duties listed in the Position Description.

that when he occasionally interviewed candidates, he simply passed them all on and made no decision as to whether they were qualified for the position, much less a "best fit" for the store.

As explained in more detail below, the testimony of the remaining PSM deponents also differed dramatically on all of the dispositive issues of this case- what duties they performed, how much time they spent on non-PSM Duties, and how much discretion and judgment they exercised. Under these circumstances, the question of whether each Plaintiff had a "primary duty" of exempt work, and thus was properly classified as exempt, can only be answered using individual evidence and by conducting fact-intensive "mini-trials" to determine what each Plaintiff did as PSM and how they did it. Plaintiffs are not similarly situated and their claims cannot be resolved with representative evidence. The collective action should be decertified.

## II.    Legal Standard

The Fair Labor Standards Act permits an employee to sue an employer to recover unpaid overtime wages "on behalf of himself or themselves . . . and other employees similarly situated." 29 U.S.C. 216(b). The question of whether employees are "similarly situated" is typically answered in two phases. At the first stage, the court grants conditional certification if the plaintiff makes a "modest factual showing" that they and potential opt-ins were victims of a common unlawful plan or policy. *See Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 104 (N.D. Ill. 2013).

The analysis at the second stage, however, is markedly different. When a defendant moves to decertify the class, the court "reevaluate[s]" certification "based on any additional evidence to determine whether there is sufficient similarity . . . to allow the matter to proceed to trial on a collective basis." *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007). While this Court explained the first stage does not "consider opposing evidence," *see* Doc. 51 at 3-4, courts at the second stage review the full record and "make[] a factual determination on the similarly situated question." *Persin v. Career Builders LLC*, No. 05-C-2347, 2005 U.S. Dist.

LEXIS 23095, * 6 (N.D. Ill. Sept. 21, 2005). This requires the court to "utiliz[e] a <u>much stricter</u> <u>standard</u>." *Id.* (emphasis added); *see also Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) ("[T]he court's inquiry becomes more stringent."). Unlike the first stage, "Plaintiffs generally must produce more than just allegations and affidavits demonstrating similarity in order to achieve final certification." *Frye v. Baptist Mem. Hosp., Inc.*, 495 Fed. Appx. 669, 671 (6th Cir. 2012). The court considers three factors: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff, and (3) fairness and procedural concerns. *Camilotes*, 286 F.R.D. at 345 (N.D. Ill. 2012). At all times, plaintiffs bear the burden of demonstrating that they are similarly situated. *See id.*

Here, the opt-in period has closed and discovery has concluded. Only 28 Plaintiffs opted to join the case, representing just over a quarter of the potential class. The parties exchanged written discovery and took numerous depositions, including both Named Plaintiffs, five Opt-In Plaintiffs, two PSMs who chose not to join the case, and several store directors. The factual record is now well-developed, and there is no evidence from which Plaintiffs can prove that they are "similarly situated" such that the testimony of a few can be applied on a class-wide basis.

## III. Plaintiffs Cannot Prove That They Are Similarly Situated.

As described more thoroughly below, Plaintiffs cannot satisfy their burden of proving that they are similarly situated because they have disparate factual and employment settings, Mariano's has affirmative defenses that must be individually applied to each Plaintiff, and fairness and procedural concerns favor decertification.

### A. Plaintiffs Have Disparate Factual And Employment Settings.

In analyzing plaintiffs' factual and employment settings, courts typically consider factors such as job duties, locations, supervision, and policies or practices that bind the plaintiffs' claims

together. *Camilotes*, 286 F.R.D. at 346. Here, the evidence establishes that none of these factors binds Plaintiffs' claims together such that they can be considered similarly situated and their claims determined on a collective basis. Rather, the PSMs' own testimony demonstrates that the duties that they performed differed drastically. And even to the extent that there is some overlap in *what* Plaintiffs did, the evidence reveals dramatic differences in *how* they performed those duties.

>   1.  *The Degree To Which Plaintiffs Were Required To Perform Non-PSM Tasks Varies By Plaintiff, Store, and Supervisor; There Is No Common Practice To Bind The Class.*

In their Complaint, Haugen and Goldston alleged that they were improperly classified as exempt employees because they actually spent their time performing "customer service and general store clerk duties" rather than their HR-related duties. *See* Complaint, Doc. 1, at ¶ 4. Conditional certification was granted based on this same theory: Without the benefit of discovery, this Court found Plaintiffs had offered evidence that they were victims of a "common practice that violated the FLSA" given Haugen and Goldston's testimony that they "and other PSMs would be called away from their regular job duties . . . for 'front end' cashier duties." *See* Doc. 51 at 5.

Discovery, however, has confirmed there is no such "common practice" of calling Plaintiffs "away from their regular job duties" to work the cash register such that Named Plaintiffs' experience can be extrapolated to other members of the class. The evidence of whether, and how often, Plaintiffs are allegedly "called away" from their duties to perform other non-PSM work varies by Plaintiff. Garcia <u>never</u> performed front-end duties.[2] Ignoffo performed them <u>50-70% of the time</u>. Deposition of Thomas Ignoffo ("Ignoffo Dep.," attached as Exhibit C) at 47:1-11, 53:17-20. Other Plaintiffs provided varying estimates of how often they were called away from PSM Duties to perform other tasks: Haugen, 10%-20% (Deposition of James Haugen ("Haugen Dep.,"

---

[2] *See* Deposition of Dolores Garcia ("Garcia Dep.," attached as Exhibit A) at 79:22-86:7 (listing duties); *id.* at 86:8-15 (confirming she testified about all of the duties she performs).

attached as Exhibit F) at 40:19-41:2, 55:18-23); Goldston and Kevin Cunningham, 40% (Deposition of Christian Goldston ("Goldston Dep.," attached as Exhibit G) at 27:15-29:8; Deposition of Kevin Cunningham ("Cunningham Dep.," attached as Exhibit H) at 34:1-16).

Evidence from Rachel Hall and Evette Nieves—two PSMs who were also deposed by Plaintiffs in this lawsuit—further demonstrates there is no "common policy" of calling PSMs away from their regular duties to cashier or bag for significant periods of time. Since becoming a PSM, Hall has "never spent significant amounts of time doing cashier or other non-PSM work." Declaration of Rachel Hall (attached as Exhibit N) at ¶ 11. Nieves has not bagged or cashiered for more than an hour in a week and, at times when she has volunteered to perform this work, has been told **not** to do it. Declaration of Evette Nieves (attached as Exhibit M) at ¶ 6; *see also* Deposition of Evette Nieves ("Nieves Dep.," attached as Exhibit I) at 97:25-98:15 (explaining "it's not [her] duty to jump on a register"); *id.* at 100:17-23 (training and interviewing took up most, if not all, of her weekly hours).[3]

Moreover, the degree to which Plaintiffs claim they were "pulled away" from their PSM Duties varied not just by Plaintiff, but also depended on their store and their supervisor. For example, Haugen alleges that the amount of time he spent on non-PSM Duties doubled when he transferred from the Glenview store to the understaffed Edgewater store. Haugen Dep. at 54:24-55:23. Cunningham testified that his first store manager did not ask him to cashier or bag, but subsequent managers leaned "heavily" on him to perform these duties. Cunningham Dep. at 16:18-17:8. Goldston claims he spent approximately 40% of his time on non-PSM Duties under

---

[3] While these two PSMs are not parties to the lawsuit, the Court should consider their testimony as further proof that Plaintiffs' allegations that they were called away from their PSM Duties to perform non-exempt work cannot be extrapolated to other members of the collective. *See Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1272-75 (M.D. Ala. 2004) (defendants' declarations were relevant to determining "whether the evidence of the Plaintiffs' job duties is merely anecdotal evidence specific to them, or can be more broadly applied" to other class members).

several store directors, but that one store director for whom he worked, Megan Gleeson, would actually "cancel" pages for Goldston to perform front-end duties so that he could focus on his PSM work.  Goldston Dep. at 29:5-33:13.

Simply put, there is no "common practice" to put on trial here.  Instead, as set forth below, the merits of each Plaintiff's claim will rise and fall based on the extent to which they performed the exempt duties in the Position Description versus the extent to which they were "pulled away" to perform other duties.  *See Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (where plaintiff "claims that . . . he spent the balance of his time performing non-administrative functions despite the fact that his job description calls for him to perform some administrative functions," the merits of his claim "will turn upon evidence relating to [plaintiff's] day-to-day tasks, and not upon any" of defendant's company policies).  And the evidence demonstrates those factors vary by Plaintiff, by store, and by supervisor.

### 2. *Plaintiffs Performed Different Duties.*

Furthermore, the evidence demonstrates that while Plaintiffs shared a job title, they simply did not perform the same duties on a day-to-day basis.  The testimony of Garcia and Ignoffo perfectly illustrates the drastic differences in Plaintiffs' duties that are not capable of representative proof.  Garcia, for instance, spends the overwhelming majority of her time performing HR-related tasks like recruiting and interviewing, coaching and counseling employees in the store, and managing team members' training.  Garcia Dep. at 80:4-83:2.  She spends most of her time performing the recruiting and hiring functions of her job.  *Id.* at 80:12-17.  She recruits candidates for openings by creating flyers and contacting community partners with whom she has established relationships.  *Id.* at 57:18-60:17.  Sometimes, if her store really needs to fill a role, she will even decide to hold a job fair—separate and apart from company-wide job fairs.  *Id.* at 57:18-58:7. Garcia conducts initial interviews of applicants and decides whether candidates will advance to a

face-to-face interview, and then conducts face-to-face interviews and decides whether those candidates will advance for a final interview with the store director. *Id.* at 43:18-47:18. Garcia prides herself on finding candidates who are a "good fit" for the store (*id.* at 59:13-60:2, 71:9-20), and does not advance candidates in the hiring process if she decides they are not the right fit (*id.* at 46:22-47:18); indeed, she concedes that she has "boxes" of candidates she has interviewed but not hired (*id.* at 44:13-17). Garcia boasts that her ability to find "best fit" candidates helped her store have the second lowest turnover rate in the area. *Id.* at 59:13-60:2, 71:9-20, Ex. 1 at Roundy's_001314 (attached as Exhibit B). She also advises team members on training courses they need to take to advance within the company (*id.* at 34:2-11) and she considers "coaching" team members to be one of her greatest strengths as a PSM (*id.* at 51:5-8, Ex. 1 at Roundy's_001310-11 (Exhibit B)). Garcia spends the remainder of her time on other human resources/personnel management tasks like managing and communicating work schedules (*id.* at 82:12-16, 83:10-16) and boosting morale by hosting social engagements and recognizing high-performing team members (*id.* at 83:17-84:4). She also spends "a lot of time" acting as a "troubleshooter" when employees bring concerns to her. *Id.* at 86:5-7. In other words, Garcia is critical to the successful operation of her store. *See* Garcia Dep., Ex. 1 at Roundy's_001318 (store director Michael Scopa stating "Dolores is a crucial part of our team and definitely helped us achieve many of our successes in 2018") (attached here as Exhibit B).

Ignoffo, on the other hand, describes his experience as a PSM much differently. Ignoffo, who worked as a PSM for approximately two and a half years, claims that he spent between 50-70% of his time every day performing "front-end" duties like bagging groceries and working the cash register – duties that Garcia does not perform *at all.* Ignoffo Dep. at 47:1-11, 53:17-20. During the little time that Ignoffo actually spent completing HR-related duties, *how* he performed

those tasks varied greatly from Garcia. For instance, in sharp contrast with Garcia, Ignoffo testified he thought recruiting outside the store was not a "productive" use of his time (Ignoffo Dep. at 92:16-17), was reprimanded in a performance review for not being willing to "go out and p[u]rsue applicants outside of the building," (*id.*, Ex. 2 at Roundy's_000543 (attached here as Exhibit E)) and could only remember attending one job fair at a village hall and a "couple" at high schools that were set up by someone else (*id.* at 24:14-26:1). And while Garcia carefully considers each applicant in order to determine whether candidates are a "best fit" for the store and deserving of a final interview with the store director, Ignoffo testified that he made no such decision—he claims he simply took notes about his interview with a candidate to the store director, and the director decided whether the candidate should move on in the process. *Id.* at 28:4-29:7.

Although both Garcia and Ignoffo held the same job title – PSM – it is not an exaggeration to say that they worked different jobs. Their primary duties are not the same: Garcia spends nearly all of her time performing the HR-related functions of her job, including recruiting and hiring, employee coaching, training, and morale in her store. In contrast, if his testimony is to be believed, Ignoffo's primary duty was little more than a backup cashier/bagger. And even to the extent that they performed some of the same functions, the manner of *how* they performed those functions could not be more different. Garcia relies on her experience, expertise, and discretion to make critical decisions about recruiting and hiring. *See* Garcia Dep. at 59:13-60:2, 71:9-20. She uses initiative and fosters outside relationships to attract strong applicants, and then makes careful and discerning decisions about who to advance through the hiring process and present to her store director for a final interview – weeding out applicants at each stage. *Id.*; *see also id.* at 57:18-60:17, 43:18-47:18. In contrast, Ignoffo essentially abandoned any external recruiting tasks, and to the extent that he occasionally interviewed candidates, he made no decisions about whether to

advance or reject applicants. *See* Ignoffo Dep. at 28:4-29:7, 92:1-25, Ex. 2 at Roundy's_000543 (attached hereto as Exhibit E). Testimony from Garcia about duties she performed and how she performed them cannot be used to reliably demonstrate what duties Ignoffo performed and how he performed them, and vice versa. Garcia and Ignoffo (and by extension, Plaintiffs) are not "similarly situated" as that term is used in casual conversation, much less legal precedent.

The testimony from the other Plaintiffs likewise demonstrates the significant differences in job duties between and among Plaintiffs. Nieves, for example, testified that she spent most of her time managing training for new and existing employees. Nieves Dep. at 51:20-52:6. This is different from Garcia (who spent most of her time recruiting and hiring) and Ignoffo (who claims to have spent most of his time running a cash register and bagging groceries). Moreover, there is diametrically opposed testimony on the extent to which PSMs were involved in employee discipline. Plaintiffs Ruba Al Ayed and Janel Larson testified they never recommended discipline for another team member, whereas Garcia and Haugen did provide input on discipline. *See* Deposition of Ruba Al Ayed ("Al Ayed Dep.," Exhibit J) at 35:20-23; Deposition of Janel Larson ("Larson Dep.," Exhibit K) at 54:18-55:16; Garcia Dep. at 35:13-17; Haugen Dep. at 70:2-10. Likewise, while Garcia has performed investigative work related to disciplinary matters, Al Ayed testified that she has never been involved in disciplinary investigations. *See* Garcia Dep. at 35:24-36:3; Al Ayed Dep. at 59:1-5. Finally, while Cunningham and Larson never administered discipline, Haugen confirmed that he administered discipline as part of his PSM job duties. *See* Cunningham Dep. at 35:15-36:20; Larson Dep. at 55:1-6; Haugen Dep. at 69:19-20.

Similarly, Plaintiffs' testimony regarding their involvement with the union further demonstrates differences in their duties. Haugen and Goldston both testified they had *no* involvement with the labor union or labor grievances. *See* Haugen Dep. at 73:12-15; Goldston

Dep. at 41:18-42:3.  Other Plaintiffs, however, identified union involvement as a key job duty: Ignoffo "dealt with our union rep a lot" and acted as a liaison between the union representative and department managers; Larson similarly served as a "go-between" the store director and union representative, would "touch base often" with the representative, and attended meetings with the union representative and employees.  *See* Ignoffo Dep. at 42:9-23; Larson Dep. at 62:12-64:15, 66:15-16.  Still others testified they had some involvement with the union representative.  *See* Al Ayed Dep. at 105:8-106:1; Garcia Dep. at 41:15-42:17.

Even when Plaintiffs performed similar tasks, the manner of *how* they claimed to perform those functions varied greatly, including the level of discretion that they exercised.  For example, while several Plaintiffs testified about their involvement in the hiring of store employees, they offered a wide variety of testimony regarding if and how they fulfilled this function.  Cunningham testified he conducted initial interviews and advanced every candidate to an in-person interview so long as they were not expressly excluded by one of the questions in the interview packet. Cunningham Dep. at 41:17-42:2.  In contrast, other PSMs made subjective, qualitative decisions about whether to advance an applicant on to the next phase: Haugen would only invite candidates to a face-to-face interview if they were able to communicate and answer questions in a respectable way.  Haugen Dep. at 57:17-23.  Likewise, Garcia does not advance candidates if, based on her evaluation, she decided they were not a "good fit."  Garcia Dep. at 45:16-46:1.

Similarly, there is conflicting evidence as to whether, and how, PSMs chose candidates for a final interview with the store director.  For example, Al Ayed testified that she mechanically forwards "every candidate . . . that meets the basic qualifications for the job" to the store director for a second interview.  Al Ayed Dep. at 115:15-20.  In contrast, some PSMs made an independent decision about whether they would advance candidates for a final interview.  Garcia Dep. at 46:13-

47:18. Ignoffo disregarded this function entirely and made no such decision. Ignoffo Dep. at 28:4-29:7. Larson testified that she typically conducted the initial interview but not the face-to-face interview, meaning "in most cases" she did not decide whether the candidate would advance to a final interview with the store director. Larson Dep. at 36:1-38:8. Al Ayed, Garcia, Ignoffo, and Larson simply did not perform the hiring function of their positions in a similar manner.

As their own testimony makes clear, Plaintiffs differed significantly in the job duties that they performed and the manner in which they performed them. Based on these meaningful differences, Plaintiffs' claims cannot be resolved on a collective basis.

B.  Mariano's Defenses Require Individualized Inquiries.

The second factor considers whether any of the defendant's affirmative defenses will require individualized proof. *E.g., Camilotes*, 286 F.R.D. at 352. "Where the court must engage in individualized inquiries to determine the applicability of a defense, this factor favors decertification." *Hundt*, 294 F.R.D. at 105. The sole issue in this case as it pertains to liability is whether Mariano's properly classified Plaintiffs as administrative employees exempt from the FLSA's overtime provisions. This issue "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities," *Schaefer- LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012), that is incapable of collective resolution in this case.

The "administrative exemption" exempts from the FLSA's overtime requirements any employee, *inter alia*, whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)-(3).

   1.   *The "Primary Duties" Test Requires Plaintiff-by-Plaintiff Analysis.*

According to the Department of Labor, an employee's "primary duty" means "the

13

principal, main, major or most important duty that the employee performs;" must be determined "[b]ased on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole;" and involves an analysis of four factors: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a).

This fact-intensive inquiry cannot be resolved with collective proof. It cannot be said for example that Ignoffo, who claims to have spent at least half of his time on non-PSM Duties like working the cash register, has the same primary duty as Garcia, who does not work the cash register or bag groceries and claims to spend between 70%-80% of her time on recruiting, training, and coaching and the remainder on other various human resources/personnel management tasks consistent with the PSM Position Description. It is especially inappropriate to analyze these two Plaintiffs together given the DOL's guidance that employees who spend "more" than half their time on exempt work "will generally" have an exempt primary duty, 29 C.F.R. § 541.700(b), so the "primary duty" analysis for Ignoffo would likely be subject to a different legal standard than the same analysis for Garcia. See Benedict v. Hewlett-Packard Co., No. 13-cv-00119, 2016 U.S. Dist. LEXIS 91139, * 34 (N.D. Cal. July 13, 2016) (granting motion to decertify where exemption analysis for some plaintiffs would involve a different legal standard).

Courts routinely find misclassification claims to be incapable of resolution on a collective basis where, as here, determining each plaintiff's "primary duty" for purposes of the administrative exemption would require an individual analysis for each plaintiff. See Dailey v. Groupon, No. 11-C-05685, 2014 U.S. Dist. LEXIS 119190, ** 19-21 (N.D. Ill. Aug. 27, 2014) (misclassification

14

claim not suitable for class treatment in light of "individualized variations in how Account Reps primarily spend their time" because "Plaintiffs must show that Account Reps not only had common duties, but also common *primary* duties"); *Pankaj Kumar v. Tech Mahindra (Americas) Inc.*, No. 4:16-cv-00905, 2019 U.S. Dist. LEXIS 49081, * 17 (E.D. Mo. Mar. 25, 2019) ("Because Plaintiffs cannot easily demonstrate primary duty on a collective-wide basis, Tech Mahindra would be left advancing the appropriate exemption defense against each individual."); *Bradford v. CVS Pharm., Inc.*, 308 F.R.D. 696, 702 (N.D. Ga. 2015) (granting motion to decertify in part because "given the various differences among their job duties, it is likely that the Court would have to conduct [an] individualized inquiry for each Plaintiff to determine what his or her primary duties were"); *Barker v. U.S. Bancorp*, No. 3:15-cv-1641, 2017 U.S. Dist. LEXIS 162717, ** 11-12 (S.D. Cal. Oct. 2, 2017) (granting motion to decertify where "the Court concludes that determining each Plaintiff's primary duty requires individualized inquiries and fact-specific analysis in order to establish misclassification"); *Hundt*, 294 F.R.D. at 107-08.

In *Hundt*, warehouse managers collectively sued their employer for unpaid overtime arguing *inter alia* that their primary duty was "manual labor and, therefore, none of them falls under the administrative exemption." *Id.* at 106. The court granted defendant's motion to decertify in part because determination of which exempt duties each plaintiff performed, and how they compared to the time each plaintiff spent performing manual labor, required individual analysis:

> When employees perform both management-related duties as well as nonexempt duties, the court must discern the employee's primary duty in order to determine whether the employer properly classified the employee as exempt. . . . [D]eterminations about each plaintiff's primary duty must be undertaken individually in order to evaluate 'relative importance of the exempt duties as compared with other types of duties,' 'the amount of time spent performing exempt work,' and 'the employee's relative freedom from direct supervision.' . . .
>
> Because the performance of manual labor must be evaluated in light of the plaintiffs' performance of management-related duties, and because the degree to

which the plaintiffs performed management-related duties was not uniform, the court must engage in individualized determinations. This weighs against allowing the case to continue as a collective proceeding.

*Id.* at 107-08.

*Hundt* is directly on point. Determining each Plaintiff's primary duty will require a fact-specific analysis into the PSM Duties they performed, as well as a careful evaluation of how those duties relate in scope and importance to any non-PSM Duties. *Id.* Like *Hundt*, "the degree to which the plaintiffs performed [PSM Duties] was not uniform," requiring the court to "engage in individualized determinations." *Id.*

> 2. *"Discretion" Is Incapable of Representative Proof.*

Even if the evidence allowed Plaintiffs' "primary duties" to be determined on representative proof—and it does not—evidence on the amount of discretion Plaintiffs exercised while performing those duties differs in ways sure to materially affect the administrative-exemption analysis on a Plaintiff-by-Plaintiff basis.

According to the DOL, the phrase "discretion and independent judgment" must be considered "in the light of all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. § 541.202(b). The DOL provides additional guidance as to when human resource managers like Plaintiffs exercise the type of discretion sufficient to qualify for the administrative exemption:

> **Human resources managers who formulate, interpret or implement employment policies** and management consultants who study the operations of a business and propose changes in organization **generally meet the duties requirements for the administrative exemption**. However, personnel clerks who "screen" applicants to obtain data regarding their minimum qualifications and fitness for employment generally do not meet the duties requirements for the administrative exemption. . . . Thus, when the interviewing and screening functions are performed by the human resources manager or personnel manager who makes the hiring decision or makes recommendations for hiring from the pool of qualified applicants, such duties constitute exempt work[.]

29 C.F.R. § 541.203(e) (emphasis added).

This regulation illustrates exactly why this case cannot be tried as a collective action using representative proof: There is conflicting testimony on the precise factors the DOL identifies as determinative in deciding whether Plaintiffs are exempt "human resources managers" or non-exempt "personnel clerks." Initially, Plaintiffs do not even agree on whether they "interpret or implement employment policies." Larson, for example, explained that she tries "to implement all policies and procedures and communicate expectations to the team," and testified that her job was to "help [management] implement changes to the rest of the team." Larson Dep. at 31:23-32:5, Ex. 5, Row 5 (attached hereto as Exhibit L). On the other hand, Haugen said he had no responsibility for making sure employment-related policies were followed. Haugen Dep. at 65:12-67:6.

Further, there is conflicting evidence as to whether Plaintiffs "make[] the hiring decision or make[] recommendations for hiring" or whether they simply "'screen' applicants to obtain data regarding their minimum qualifications and fitness for employment." *See* 29 C.F.R. § 541.203(e). As set forth above, Garcia evaluates candidates during interviews to see if they are a "good fit" for the store and makes a decision about whether to advance them for a final interview with the store director. Ignoffo claims that he does not make any such decision. *See supra.* This diametrically opposed evidence precludes this critical issue from being decided on a class-wide basis.

Further complicating matters, to the extent Ignoffo testifies he did not exercise any discretion in deciding which candidates received a final interview with his store director, Mariano's intends to present evidence that he either did exercise, or should have been exercising, such discretion as evidenced by comments in his performance review that his "[j]udgment has been questionable" and "[s]everal candidates with severe red flags have been approved and passed

17

on to store director for interviews." Ignoffo Dep., Ex. 1 at 1 (attached hereto as Exhibit D). This is a fundamentally different defense than Mariano's anticipates presenting against, for example, Garcia, who testified she spent her time performing the duties listed on the Position Description. The material differences between these two defenses further warrants decertification. *See McEarchen v. Urban Outfitters, Inc.*, No. 13-cv-3569, 2017 U.S. Dist. LEXIS 33335, * 28 (E.D.N.Y. Mar. 7, 2017) (granting motion to decertify where "[t]o defend against some of the opt-in plaintiffs, [defendant] will suggest that they are exaggerating the nature of their non-managerial work; while as to other opt-in plaintiffs, [defendant] expects to embrace their testimony and rely on a legal argument that the agreed-upon facts show them to be exempt"). Moreover, three of the Plaintiffs did not work as a PSM during the three years prior to the date they opted-in to this lawsuit, meaning the parties will have to separately litigate Mariano's statute-of-limitations defense for a few, but not all, Plaintiffs.

Mariano's is not able to present a class-wide defense, not because its classification decision was incorrect, but because significant differences in Plaintiffs' duties make litigating the administrative exemption on representative evidence impossible. *See McEarchen*, 2017 U.S. Dist. LEXIS 33335, * 29 ("[Defendant] is unable to mount a class-wide exemption defense not because some of the plaintiffs were not exempt, but because the disparities among the plaintiffs make it impossible for [Defendant] to prove each plaintiff's exemption through representative evidence.").

C.    Fairness and Procedural Concerns

The Court must also "consider whether proceeding as a collective would create fairness or procedural benefits." *Hundt*, 294 F.R.D. at 108. The purposes of collective actions—to promote judicial economy and efficiency for plaintiffs whose damages might be too small to justify an individual lawsuit—"are not served where the need to address individualized factual issues cuts against any efficiency to be gained from collective treatment." *Blakes v. Ill. Bell. Tel. Co.*, No. 11

CV 336, 2013 U.S. Dist. LEXIS 176496, at * 62 (N.D. Ill. Dec. 17, 2013). Where individual factual issues predominate, "Plaintiffs' desire to litigate collectively for economic reasons . . . does not override the negative effects that certification is very likely to have on the fairness and manageability of the proceedings." *Camilotes*, 286 F.R.D. at 353. "A collective action is oxymoronic . . . where proof regarding each individual plaintiff is required to show liability." *Russell v. Ill. Bell. Tel. Co.*, 721 F. Supp. 2d 804, 822 (N.D. Ill. 2010).

Where, as here, plaintiffs' experiences are not truly representative of each other, "proceeding collectively would . . . have one of two results—it would either prejudice defendants' ability to present their defenses, or require mini-trials for each of the opt-in plaintiffs." *Stevens v. HMSHost Corp.*, No. 10-cv-3571, 2014 U.S. Dist. LEXIS 119653, ** 21-22 (E.D.N.Y. Aug. 27, 2014) (granting motion to decertify). Accordingly, courts routinely decertify upon concluding that representative evidence will not work. *Id.*; *see also Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 588 (E.D. La. 2008) (granting motion to decertify where there was conflicting evidence relevant to defendant's exemption defense, reasoning "[w]ere the Court to rule in plaintiffs' favor, it would have to do so on the basis of proof that is not representative of the whole class, and the verdict would result in liability that is not likely to be warranted in reality"); *Pankaj*, 2019 U.S. Dist. LEXIS 49081, *15 ("Having already concluded that there are significant and material variations in the primary duties of the collective-action members, the Court concludes that it would be both unfair and logistically impossible to try this case on representative evidence.").

Here, Plaintiffs have not demonstrated that the experiences of one (or several) Plaintiffs are representative of the others such that their claims can fairly be adjudicated based on representative evidence. Evidence of what Haugen did is not evidence of what Ignoffo did; evidence of what Ignoffo did is not evidence of what Garcia does. And regardless of which

Plaintiffs testified at trial, there is no evidence in the record from which a fact-finder could draw any conclusions about the duties of numerous non-testifying Plaintiffs, including whether they worked the cash register most of the time (like Ignoffo), some of the time (like Haugen), or none of the time (like Garcia). Proceeding collectively in these circumstances will "either prejudice [Mariano's] ability to present [its] defenses or require mini-trials for each of the opt-in plaintiffs." *Stevens*, 2014 U.S. Dist. LEXIS 119653, ** 21-22.

## IV. Conclusion

Plaintiffs have not met their burden of showing that they are "similarly situated." Mariano's Motion for Decertification should be granted and the Court should dismiss the claims of the opt-in Plaintiffs without prejudice.

Respectfully submitted,

*/s/ David K. Montgomery*
David K. Montgomery (Pro Hac Vice)
Jamie M. Goetz-Anderson (Pro Hac Vice)
JACKSON LEWIS P.C.
PNC Center, 26th Floor
201 E. Fifth Street
Cincinnati, OH 45202
Telephone: (513) 898-0050
Facsimile: (513) 898-0051
Email: David.Montgomery@jacksonlewis.com
Email: Jamie.Goetz-Anderson@jacksonlewis.com


Christopher S. Griesmeyer (ARDC #6269851)
GREIMAN, ROME & GRIESMEYER, LLC
2 North LaSalle Street, Suite 1601
Chicago, IL 60602
Telephone: (312) 428-2750
Email: cgriesmeyer@grglegal.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on March 11, 2021, the foregoing was electronically filed with the Court's CM/ECF system, which will send electronic notification to all counsel of record.

/s/ David K. Montgomery
David K. Montgomery

4840-2511-3824, v. 2