IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JAMES HAUGEN AND CHRISTIAN GOLDSTON,** on behalf of themselves, and all other Plaintiffs similarly situated, known and unknown, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 18-cv-07297<br>)<br>) |
| v. | ) **Honorable Judge Elaine E. Bucklo**<br>) |
| **ROUNDY'S ILLINOIS, LLC D/B/A MARIANO'S** | ) **Magistrate Judge Sheila M. Finnegan**<br>)<br>) |
| Defendant. | ) |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION
## TO DECERTIFY FLSA COLLECTIVE ACTION

Twenty-two months ago, Plaintiffs filed a First Amended Complaint alleging Defendant's People Services Managers ("PSMs") were misclassified because they "performed significant hours of non-exempt manual labor . . . such as operating the cash registers, bagging groceries, stocking shelves, cutting and arranging flowers, slicing deli products and delivering catering orders" instead of the human resources and personnel management duties listed in the PSM Position Description ("PSM Duties"). Dkt. 38 at ¶ 14. Plaintiffs asked the Court to certify this case as a collective action on the grounds that other members of the collective were similarly assigned duties "not within the Company's job description." Dkt. 49 at 5-6. The Court granted conditional certification on this basis, reasoning that Plaintiffs' allegations that they were regularly "called away" from their PSM Duties to perform front-end work like cashiering constituted an alleged unlawful common practice. Dkt. 51 at 5.

As set forth in Defendant's Motion to Decertify ("Motion," Dkt. 109), discovery revealed no such "common practice" exists because Plaintiffs offered vastly disparate testimony about

whether, and the extent to which, they were "called away" from their PSM Duties. The time Plaintiffs spent performing non-PSM Duties ranged from 50-70% (Thomas Ignoffo) to not at all (Dolores Garcia), and everywhere in between these two extremes. Recognizing that they cannot prove that they are similarly situated in the extent to which they are "called away" from their PSM Duties—the practice this case was conditionally certified to litigate—Plaintiffs abandon this position entirely in their Opposition. Dkt. 121. Instead, Plaintiffs now allege the exact opposite- that they are similarly situated *because they all perform the duties in the Position Description*.

Notwithstanding Plaintiffs' eleventh-hour reversal in their theory of the case, Plaintiffs have failed to satisfy their burden of proving that they are similarly situated such that their claims can be adjudicated on a collective basis. First, Defendant's Motion properly cited deposition testimony and other evidence in the record which demonstrates that substantial differences exist in the job duties that Plaintiffs' performed and how they performed them. The primary "evidence" offered by Plaintiffs in an attempt to rebut this testimony is a generic "Master Declaration" signed by all Plaintiffs (Dkt. 121-1) which is untimely, irrelevant, and contradicts prior testimony. Second, Plaintiffs cannot establish that the Position Description constitutes an unlawful "common practice" binding the class together after previously disclaiming it in pleadings and briefs and testifying they spent disparate amounts of time performing the duties in the Position Description. Third, Plaintiffs cannot avoid decertification by minimizing the weight of their burden in contravention of Seventh Circuit law or otherwise attempting to improperly shift their burden to Defendant. Finally, all three factors relevant to the decertification analysis support decertification under the established facts in this case.

Plaintiffs have not met their heavy burden to show they are similarly situated such that their claims can be decided on a collective basis. The Court should grant Defendant's Motion.

I.    **The Evidence In The Record Strongly Supports Decertification**

In its Motion, Defendant offered substantial evidence establishing differences in the duties that Plaintiffs performed and how they performed them, which demonstrates that Plaintiffs cannot satisfy their burden of establishing that they are similarly situated. *See* Motion at 5-13. Plaintiffs cannot meet <u>their</u> burden by merely criticizing <u>Defendant's</u> evidence, but in any event, Plaintiffs' attacks on this evidence are unfounded and without legal or factual support. Furthermore, the Master Declaration that Plaintiffs submitted with their Opposition—the primary "evidence" upon which Plaintiffs' opposition is premised—should not be afforded any evidentiary weight because it is untimely, contradicts prior testimony, and fails to address the critical issues in the case.

    A.    <u>Plaintiffs' Criticism About The Identity And Number Of Witnesses Defendant Cites In The Motion Is Not Supported By The Law and Inappropriately Shifts The Burden On Certification To Defendant</u>

Plaintiffs make multiple unfounded arguments about the witnesses whose testimony Defendant cites in its Motion. Initially, Plaintiffs argue Defendant "cherry picked" witnesses who "worked as PSMs at as diverse of store locations as possible so as to exploit even the slightest differences in PSM job duties." Opposition at 3. This argument not only fails, it goes to the very heart of why this case should be decertified. Initially, Plaintiffs bear the burden of proving that the collective <u>they</u> defined—which encompasses PSMs from different stores—are similarly situated. ***More significantly, the fact that Plaintiffs object to comparing PSMs from different stores on the grounds that they are not representative of each other essentially concedes they have failed to meet their burden.*** If Plaintiffs were truly similarly situated, as they allege and as they must prove in order to proceed on a collective basis, there would be no witnesses from which to "cherry pick[]" differences; each Plaintiff – regardless of store location, store manager, or any other factor – would testify that they have the same primary duty. As described in Defendant's

3

Motion, there is no such uniformity here, which precludes them from proceeding collectively. *See* Motion at 5-13.

Next, Plaintiffs criticize Defendant for basing its Motion on testimony from two Named Plaintiffs and five Opt-In Plaintiffs, claiming this is an insufficient number of witnesses to prove "Plaintiffs are so sufficiently dissimilar so as to support decertification." Opposition at 3. This argument is legally baseless on multiple grounds. First, Plaintiffs have the burden to show they are similarly situated; Defendant does not have the burden to show they are "dissimilar." *See Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. June 28, 2010) (explaining when a defendant moves to decertify a collective action, "[t]he burden is on the plaintiffs to show that they are 'similarly situated' as required by the statute"); *Thind v. Healthfirst Mgmt. Servs., LLC*, No. 14 Civ. 9539, 2016 U.S. Dist. LEXIS 170503 \*\* 5-6 (S.D.N.Y. Dec. 9, 2016) ("When a defendant moves for decertification, the burden is on the named plaintiff to show by a preponderance of the evidence that the opt-in plaintiffs are similarly situated.").

Second, along those same lines, there is no authority for the proposition that a defendant is required to depose and present testimony from every member of a collective to warrant decertification. Requiring this level of proof would run counter to one of the fundamental purposes of permitting Plaintiffs to proceed collectively in the first place, which is to allow "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also Russell*, 721 F. Supp. 2d at 822 ("A collective action is oxymoronic . . . where proof regarding each individual plaintiff is required to show liability.").

By criticizing the absence of evidence of other collective members, Plaintiffs essentially ask the Court to assume every member who was not deposed is similarly situated to the Named Plaintiffs (despite the fact that those who were deposed are not similarly situated). But Plaintiffs

4

<u>have the burden to prove that inference should be made</u> and they have completely failed in this respect. Given the disparate testimony on the extent to which Plaintiffs perform the PSM Duties listed in the Position Description and the extent to which they perform different duties entirely, there is no basis, for example, from which to infer what the primary duties of other collective members are, whether they perform front-end duties often (like Ignoffo), sometimes (like James Haugen), or never (like Garcia), or whether they make hiring recommendations (like Garcia) or do not make such recommendations (like Ignoffo). The absence of evidence from other collective members is <u>not</u> evidence that they are similarly situated. Plaintiffs' position that members of a collective are similarly situated unless Defendant proves otherwise inappropriately shifts Plaintiffs' burden on certification to Defendant.

      B.      <u>Defendant's Motion Correctly Cites Plaintiffs' Sworn Testimony</u>

To the extent that Plaintiffs suggest that Defendant's Motion misrepresents Plaintiffs' deposition transcripts, they are flat wrong. The transcripts filed in support of Defendant's Motion speak for themselves and Defendant stands by the propositions for which they are cited.

For example, Plaintiffs criticize Defendant's assertion that Garcia did not perform front-end duties like cashiering or bagging groceries (Opposition at 5-6), but Garcia testified about the duties she performed as a PSM and how much time she spent on them, did not include front-end duties in her description, and confirmed on multiple occasions that she testified about all of the duties she had performed. *See* Dkt. 109-1, Deposition of Dolores Garcia ("Garcia Dep.") at 79:22-86:15.[1] The only reasonable interpretation of this testimony is that she did not perform front-end

---

[1] Garcia estimated she spent 50% of her time recruiting (Dkt. 109-1, Garcia Dep. at 80:12-13), 10-15% conducting store walkthroughs (*id.* at 80:18-81:23), 10-15% on training (*id.* at 82:17-83:1) and testified about numerous other duties that filled the remaining 20-30% of her time (*id.* at 83:1-86:15). In other words, she fully accounted for all her time without testifying that she performed front-end duties.

5

duties. Notably, Plaintiffs—who have the burden of showing Garcia is similarly situated to other collective members who allege they performed front-end duties—do not provide any evidence or argument that she did.

As another example, Plaintiffs claim Defendant's assertion that Ignoffo spent "50-70%" of his time on front-end duties "crosses the chalk line of disingenuous." Opposition at 6. There is nothing disingenuous about Defendant's citation. Ignoffo very clearly testified that, on average, he spent "at least 50 percent of [his] time" performing front-end duties (Dkt. 109-3, Deposition of Thomas Ignoffo, ("Ignoffo Dep.") at 53:17-54:8) though it could be as high as 60-70% during holidays and weekends (*id.* at 47:1-11).

Plaintiffs also claim Defendant takes "questionable liberty" with its assertion that Christian Goldston spent 40% of his time doing non-PSM Duties because, Plaintiffs allege, the testimony to which Defendant cites was limited to the South Loop store, and Goldston testified he spent less time on non-PSM Duties under one particular store manager, Megan Gleeson. Opposition at 6-7. Plaintiffs' argument fails for multiple reasons. First, South Loop is the only relevant store because it is the only store at which Goldston worked as a PSM. Ex. A, Deposition of Christian Goldston ("Goldston Dep.") at 17:16-18:23. Second, Defendant acknowledges Goldston spent less time on non-PSM Duties when working under store manager Ms. Gleeson—<u>it expressly relied on this fact in arguing Plaintiffs' job duties are not uniform and vary by supervisor</u>. *See* Motion at 7-8.

Finally, Plaintiffs allege Defendant attempts to "mislead the Court" by stating Kevin Cunningham spent 40% of his time on non-PSM Duties. Opposition at 7. Cunningham testified that, when things were going "well," he spent roughly 60% of his time on his PSM role, but things were "frequently not perfect" and sometimes he spent 100% of his time on non-PSM Duties. Dkt.

6

109-8, Deposition of Kevin Cunningham at 34:1-16. The only reasonable interpretation of this testimony is he spent at a minimum 40% of his time on non-PSM Duties.

        C.        <u>The Master Declaration Is Irrelevant and Contradicts Prior Testimony</u>

Unable to rebut the actual evidence in the record, Plaintiffs rely on the Master Declaration that they manufactured in response to Defendant's Motion, four months after the discovery deadline. The Master Declaration is insufficient to meet Plaintiffs' burden because it is irrelevant and contradicts prior testimony.

Initially, the Master Declaration is totally irrelevant because it offers no evidence establishing that the two critical issues in this lawsuit—what Plaintiffs' primary duties are and whether they are exempt—can be decided on a collective basis.

The application of the administrative exemption requires a determination of the employee's "primary" duty, which is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The Master Declaration does not allege what any particular PSM's "principal, main, major or most important duty" was. Instead, it generically states the PSMs who signed it performed "nearly all" of the PSM Duties "[a]t some time or another," Master Declaration at ¶ 5, which is not relevant to the primary duty analysis.[2] More importantly, the Master Declaration does not even allege that Plaintiffs had the <u>same</u> primary duties or provide any evidence—such as evidence that Plaintiffs spent similar amounts of time on certain tasks—that would support such an allegation. For example, an attorney and her legal

---

[2] For context, some of the Plaintiffs testified that they did not spend much time performing the duties described in the Master Declaration. *Compare* Master Declaration at ¶ 6 (alleging Defendant's orientation steps are dictated by company policy) *with* Dkt. 109-6, Deposition of James Haugen at 41:18-42:8 (orientation is one of multiple duties that took up only 10-15% of Haugen's time); *compare also* Master Declaration at ¶ 10 (alleging Defendant's training dictated by company policy) *with* Ex. D, Deposition of Janel Larson Dep. at 40:22-41:1 (Larson only spent 10-15% of her time on training).

assistant may both make copies or file documents "[a]t some time or another," but this does not prove that such tasks are the attorney's primary duty (or the legal assistant's), or that they have the same primary duty. Instead, the Master Declaration concedes that "the amount of time spent on each task was not always identical." *Id.* at ¶ 3. The Master Declaration fails to establish that Plaintiffs' primary duties can be established on a collective basis, a prerequisite for collective treatment in misclassification cases like this one. *See* Motion at 13-16 (citing cases).

Even if the Master Declaration could be used to establish that Plaintiffs' primary duties could be determined on a collective basis (which it cannot), it fails to demonstrate that the question of whether Plaintiffs' primary duties are "exempt" is capable of collective resolution. First, this analysis requires a fact-intensive inquiry regarding *inter alia* "the relative importance of the exempt duties as compared with other types of duties" and "the amount of time spent performing exempt work," 29 C.F.R. § 541.700(a), factors that the Master Declaration does not address at all.[3] Second, adjudication of Defendant's administrative exemption defense will require an analysis of how much discretion Plaintiffs exercise, but the Master Declaration does not allege whether or not Plaintiffs exercise discretion in the tasks listed therein, or—more importantly—that they exercised similar amounts of discretion such that this issue can be resolved collectively.[4]

The Master Declaration's complete failure to address issues like what Plaintiffs "principal" or "most important" duties are, how much time they spend on the human resources and personnel management duties in the Position Description compared to non-PMS Duties like working the

---

[3] This is not surprising given the disparities in Plaintiffs' testimony about how much time they spent performing PSM Duties vis-à-vis front-end duties. *See* Motion at 6-8.

[4] The depositions and other evidence in the record reveals wide disparities on crucial factors relevant to the discretion issue like whether Plaintiffs "interpret or implement employment policies" and whether they make hiring recommendations. *See* Motion at 16-18.

front-end, and how much discretion they exercise in their daily work are substantive deficiencies that demonstrate the declaration fails to prove Plaintiffs' claims can be resolved on a collective basis. As one practical example, Ignoffo claims to have spent at least half of his time on non-PSM Duties like working the cash register, while Garcia does not work the cash register, does not bag groceries, and claims to spend between 70-80% of her time on recruiting, training, and coaching and the remainder on other various human resources/personnel management tasks consistent with the PSM Position Description. *See* Motion at 8-11, 14. The Master Declaration's assertion that they both performed PSM Duties "[a]t some point or another" does not change the fact that their primary duties cannot be determined based on collective proof.

Notwithstanding its substantive deficiencies, the Court should disregard the Master Declaration for the additional reason that it contradicts prior sworn testimony.[5] "Allegations in a declaration that contradict earlier deposition testimony should generally not be credited." *Fields v. Bancsource, Inc.*, No. 1:14-cv-7202, 2015 U.S. Dist. LEXIS 73428 ** 6-8 (N.D. Ill. June 5, 2015) (declarations submitted by FLSA plaintiffs in support of certification were not entitled to any evidentiary weight because they contradicted prior deposition testimony).

First, to the extent the Master Declaration suggests Plaintiffs only performed PSM Duties (*see* ¶ 5, claiming the "Position Description is the only document I ever saw . . . that described a PSM's duties"), it contradicts Plaintiffs' testimony that PSMs spent varying amounts of time performing different duties entirely. *See* Motion at 6-8. Second, the Master Declaration's

---

[5] Plaintiffs' failure to produce the Master Declaration until after the discovery deadline—even after Defendant filed its Motion to Decertify—is extremely prejudicial. Had Plaintiffs produced this declaration in timely fashion, Defendant could have questioned Plaintiffs during depositions about the vague allegations in the declaration, like for example, which duties they claim to have performed "[a]t some time or another" (¶ 5) and how often they performed them. The Court should not permit Plaintiffs to avoid decertification by relying entirely on vague allegations in an untimely declaration that Defendant did not have the opportunity to evaluate in discovery.

9

conclusory assertion that Plaintiffs performed "identical duties" (*see* ¶ 3) both (i) contradicts Plaintiffs' testimony that they did different things, *see* Motion at 5-12, and (ii) contradicts Plaintiffs' testimony that, even when they performed the same tasks like interviewing candidates, they performed them differently, *see id.* at 12-13. Third, the Master Declaration's allegation that Plaintiffs know how PSMs in other stores spend their time (*see* ¶ 10) contradicts testimony from multiple Plaintiffs that they either do not have relationships with PSMs in other stores or do not know what they do. *See* Ex. B, Ignoffo Dep. at 58:16-19 ("Q. . . . So is it fair to say that you didn't have a lot of direct contact with PSM's at other stores? A. No, we did not have direct contact."); Ex. C, Garcia Dep. at 95:3-6 ("Q. Have you spent time in other stores and have an indication of what goes on in other stores other than the Des Plaines store? A. No."); Ex. A, Goldston Dep. at 61:12-62:20 (explaining no other PSM ever told him what percentage of time they spent performing non-PSM Duties).

As a result of these deficiencies, the Master Declaration should not be afforded any evidentiary weight.

II. **Plaintiffs Cannot Rely On The Position Description After Basing Their Claims, And Obtaining Conditional Certification, On Their Allegations That They Are Required To Perform Duties Not Listed In The Position Description**

Having failed to produce evidence that members of the collective are similarly situated in the extent to which they perform front-end duties instead of their exempt human resources/personnel management duties as alleged in the complaint and motion for conditional certification, Plaintiffs now reverse course and argue they are similarly situated because the "Position Description provides solid evidence that the PSM position is significantly robotic from store to store." Opposition at 10-11. This argument fails for two reasons.

First, Plaintiffs have expressly disclaimed the Position Description since the inception of this case. Plaintiffs' operative pleading alleges they are misclassified because they spent their time "operating the cash registers, bagging groceries, [and] stocking shelves" instead of performing their PSM Duties. Dkt. 38 at ¶ 14. While briefing conditional certification, Plaintiffs represented to the Court that they are similarly situated (and misclassified) <u>because they do not perform the PSM Duties listed in the Position Description</u>:

> Goldston testified that his experience involved being assigned to other departments and clerical tasks that were not within the Company's PSM job description. Goldston testified that while working with another PSM, they both were pulled away from PSM "duties" as much as 30% of the time because help was needed in other departments or front-end store cashier functions. See Goldston dep. excerpt, pages 14-16, attached as **Exhibit B**. Goldston would get assigned non-PSM duties as far-fetched as delivering cakes and other clerical tasks so much that his PSM duties were not getting completed, and as a result he authored a letter of concern in that regard to Defendant's vice president of HR. **Exhibit B**, pages 26-27. Goldston specifically testified that he "got a lot of feed back from a lot of different PSM colleagues" who concurred with his position that PSMs were being assigned random duties not within the Company's job description. **Exhibit B**, pages 26-2. Goldston, like Haugen, also referred to the "PSM meetings" where he became privy to the "mutual complaint" of PSMs being assigned to non-PSM duties. **Exhibit B**, pages 63-64.

Dkt. 49 at 5-6. This Court expressly relied on these representations in granting conditional certification, finding Plaintiffs' allegations that they "would be called away from their regular job duties . . . for 'front end' cashier duties" constituted an alleged "common practice that violated the FLSA." Dkt. 51 at 5.

Plaintiffs cannot now point to the Position Description as evidence that they are similarly situated after expressly premising their claims on the allegation that they do not perform those duties and obtaining conditional certification on that basis. *See*, *e.g.*, <u>Green v. Harbor Freight Tools USA, Inc.</u>, 888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) (where "Plaintiffs offer testimony from individual Store Managers that the written job description does not accurately reflect their

11

day-to-day duties," they "may not rely on the job description itself as generalized evidence of the scope and similarity of their daily activities"). It is illogical (and prejudicial to Defendant) for Plaintiffs to now argue the Position Description demonstrates they are similarly situated 17 months after this Court found Plaintiffs' allegations that they <u>did not perform the duties in the Position Description</u> constituted the "'factual nexus' connecting [them] to other PSMs as victims of an alleged unlawful overtime wage practice." Dkt. 51 at 5.

Second, as a practical matter, the Position Description cannot be a "common practice" justifying collective treatment because putting the Position Description on trial will not collectively resolve Plaintiffs' claims. Determining whether the Position Description describes an exempt position will not resolve the claims of Plaintiffs who testified they spent significant time performing non-PSM Duties. *See* Motion at 6-8. It is not even possible to collectively adjudicate the exempt status of the Position Description given Plaintiffs' disparate testimony about which duties in the description they performed and how they performed them. *See* Motion at 9-13. As one example, it would be impossible to collectively determine whether the Position Description constitutes an exempt "human resources manager" position pursuant to 29 C.F.R. § 541.203(e) given Garcia's testimony that she makes hiring recommendations and Ignoffo's testimony that he does not. *Id.* at 16-18. Instead, each of Plaintiffs' misclassification claims will have to be analyzed and adjudicated based on individual evidence.

### III. Plaintiffs' Argument That They Have A Lower Burden Than Under Rule 23 Misstates Seventh Circuit Law

Citing to only cases from other jurisdictions, Plaintiffs argue the question of whether they are similarly situated at this stage is to "be conducted under a far less stringent standard than a similar question under the strict mandates of Fed. R. Civ. P. 23 Class requirements." Opposition at 14. <u>That is not the law in this circuit</u>. To the contrary, the Seventh Circuit has expressly stated

12

that "despite the difference between a collective action and a class action . . . there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Plaintiffs have not met their burden under any standard, but their attempt to shift the focus away from the disparate testimony in the record by relying on a lower standard misstates Seventh Circuit law. *Id.*; *see also Elder v. Comcast Corp.*, No. 12 C 1157, 2015 U.S. Dist. LEXIS 70231 ** 15-16 (N.D. Ill. June 1, 2015) ("Seventh Circuit precedent remains binding here. The court will therefore consider both the proposed collective action and class action in this case 'as if it were a single class action' and apply the Rule 23 standards to Plaintiffs' motion for class certification and [defendant's] motion for FLSA decertification.").

### IV. The Relevant Decertification Factors All Support Decertification

Defendant's Motion established that the three factors relevant to the decertification analysis support decertification because Plaintiffs have dissimilar employment settings, Defendant's defenses require individual Plaintiff-by-Plaintiff analysis, and Plaintiffs' claims are not capable of representative proof. The Opposition fails to rebut any of these points. First, Plaintiffs argue they share "similar factual and employment settings" because they have the same title, Position Description, hours, and core job duties. Opposition at 15-16. This argument fails. Plaintiffs' title and hours are irrelevant to the misclassification analysis, Plaintiffs have disclaimed the Position Description (*see* Section II, *supra*), and the <u>evidence</u> is that Plaintiffs spent their time performing different duties—and performing similar duties differently—regardless of the conclusory and unsupported allegations in the Master Declaration.

Second, Plaintiffs argue decertification is not warranted because Defendant asserts only one defense, the administrative exemption. Opposition at 16. This argument is wrong as a matter of law and fact. Initially, Defendant does not have just one defense. The Motion established Defendant intends to present additional defenses against some but not all Plaintiffs, including defenses based on the statute of limitations and the fact that some Plaintiffs should have but chose not to perform the exempt duties in the Position Description. Motion at 17-18. The Opposition offers nothing to show that these necessarily individualized defenses can be adjudicated collectively and efficiently.

In any event, Plaintiffs' argument that a defendant is required to assert more than one defense in order to decertify a collective action is not supported by a legal citation because it is wrong. To the contrary, courts decertify collective actions where, like here, applying one exemption to each member of the collective will require individualized inquiries. *See*, *e.g.*, [Lockhart v. D&S Residential Servs.](), *LP*, No. 2:18-cv-2586, 2020 U.S. Dist. LEXIS 145321, * 31 (W.D. Tenn. Aug. 13, 2020) ("Whether Defendant would assert a single, unitary defense against the Opt-Ins' claims does not counsel against decertification[.]"); [Bradford v. CVS Pharm., Inc.](), 308 F.R.D. 696, 702 (N.D. Ga. 2015) (decertification is appropriate "even if the Defendant had asserted only one defense" because "the Court would still have to conduct a separate analysis for each Plaintiff to determine whether that defense applies to him or her"); [Johnson v. Big Lots Stores, Inc.](), 561 F. Supp. 2d 567, 586-87 (E.D. La. 2008) (decertifying collective action where defendant's single exemption defense required individual "plaintiff by plaintiff" trials).

Third, Plaintiffs' Opposition makes no showing at all that this case can proceed in a fair and efficient manner. To the contrary, Plaintiffs' suggestion that factual disparities between Plaintiffs can be cured by calling all of the Plaintiffs to testify (Opposition at 18) concedes that

14

representative proof may not work and is belied by the well-recognized proposition that a collective action is an inappropriate procedural mechanism to adjudicate claims that require individualized inquiries. *See*, *e.g.*, Russell., 721 F. Supp. 2d at 822. Finally, the Court should disregard Plaintiffs' argument that sub-classes may be appropriate (Opposition at 20) because it is unsupported by any substantive argument as to what those subclasses would be—Plaintiffs expressly decline to provide any proposed sub-classes—and courts in this district routinely reject these types of unsupported, conclusory arguments. *See*, *e.g.*, Hundt v. DirectSat USA, LLC, 294 F.R.D. 101, 109 (N.D. Ill. July 1, 2013) ("To proceed with subclasses, the plaintiffs must first propose subclasses and explain how the subclasses will serve the fairness and procedural concerns of proceeding collectively. . . . Because the plaintiffs have failed to propose subclasses or any other litigation plan the court will not address the issue further"); Camilotes v. Resurrection Health Care Corp., 286 F.R.D. 339, 354 (N.D. Ill. Oct. 4, 2012) ("Generically stating that unspecified mechanisms may exist is not sufficient to allay the Court's manageability and fairness concerns[.]").

Plaintiffs' Opposition fails to prove Plaintiffs are similarly situated such that their claims can be adjudicated on a collective basis. Defendant respectfully requests that this Court grant its Motion to Decertify (Dkt. 109) and dismiss the opt-in Plaintiffs without prejudice.

Respectfully submitted,

/s/ David K. Montgomery
David K. Montgomery (Pro Hac Vice)
Jamie M. Goetz-Anderson (Pro Hac Vice)
JACKSON LEWIS P.C.
PNC Center, 26th Floor
201 E. Fifth Street
Cincinnati, OH 45202
Telephone: (513) 898-0050

15

Facsimile: (513) 898-0051
Email: david.montgomery@jacksonlewis.com
Email: Jamie.Goetz-Anderson@jacksonlewis.com


Christopher S. Griesmeyer (ARDC #6269851)
GREIMAN, ROME & GRIESMEYER, LLC
2 North LaSalle Street, Suite 1601
Chicago, IL 60602
Telephone: (312) 428-2750
Email: cgriesmeyer@grglegal.com

*Counsel for Defendant*

# CERTIFICATE OF SERVICE

    I certify that on June 24, 2021, the foregoing was electronically filed with the Court's CM/ECF system, which will send electronic notification to all counsel of record.

                                /s/ David K. Montgomery
                                David K. Montgomery


4840-8572-6447, v. 2