IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| James Haugen and Christian Goldston, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 18-cv-7297 ) ) |
| Roundy's Illinois, LLC d/b/a Mariano's | ) ) ) |
| Defendant. | ) ) |

Memorandum Opinion and Order

Plaintiffs James Haugen and Christian Goldston sued their employer, Roundy's Illinois, LLC d/b/a Mariano's ("Mariano's"), alleging, *inter alia*, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* I previously granted conditional class certification, allowing plaintiffs to bring their FLSA claims on behalf of similarly situated employees who opted to join the collective action under 29 U.S.C. § 216(b). ECF No. 51. Twenty-eight plaintiffs opted in. Mariano's has now moved to decertify the FLSA class [109]. For the reasons that follow, the motion to decertify is granted.

I.

Opt-in plaintiffs are current or former People Service Managers ("PSMs") at Mariano's grocery stores in the Chicagoland

area. Each Mariano's store employs one PSM, who has responsibility for human-resource functions at the store, including recruiting and hiring, handling employee complaints and grievances, safeguarding employee morale, and ensuring that employees have completed necessary certification and training. Mariano's deemed the PSM position "exempt," which meant that Mariano's would not be required to pay PSMs overtime at a rate of one-and-one-half times regular pay for any hours worked in excess of forty hours per week. Plaintiffs argue that Mariano's misclassified the PSMs and violated the FLSA by failing to pay them the overtime rate.

This case proceeded through discovery. Seven plaintiff PSMs were deposed: the two named plaintiffs, Mr. Haugen and Ms. Goldston, and five opt-in plaintiffs selected by Mariano's, Dolores Garcia, Janel Larson, Kevin Cunningham, Ruba Al Ayed, and Thomas Ignoffo. Plaintiffs also deposed two current PSMs who did not elect to opt into the class, Evette Nieves and Rachel Hall.

II.

Under the FLSA, employees are entitled to overtime pay at a rate of one-and-one-half times their regular payment rate unless they are subject to an exemption. 29 U.S.C. §§ 207(a)(1), 213. "[A]ny employee employed in a bona fide executive, administrative, or professional capacity" is exempt. 29 U.S.C. § 213(a)(1). At issue here is the administrative exemption. Under 29 C.F.R. § 541.200(a), an administrative employee is any employee:

2

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

The question of whether an employee falls under the administrative exemption "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012).

The FLSA allows a plaintiff to bring a collective action to recover unpaid overtime or minimum wages on behalf of herself "and other employees similarly situated." 29 U.S.C. § 216(b). Courts in this district have commonly employed a two-part test to determine whether employees are "similarly situated" such that a collective action may proceed. *Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 103-04 (N.D. Ill. 2013). "At the first stage, a named plaintiff 'can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were

victims of a common policy or plan that violated the law.' . . . At the second stage, however, the court's inquiry becomes more stringent." *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) (St. Eve, J.) (citing *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *9 (N.D. Ill. Sept. 7, 2012)). When considering a motion for decertification after the conclusion of discovery, courts engage in the more "stringent" second-stage inquiry. *See Hundt*, 294 F.R.D. at 104. At that stage, the court considers the following factors: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Camilotes*, 286 F.R.D. at 345 (citation omitted). "Plaintiffs bear the burden of demonstrating that they are 'similarly situated.'" *Id.*

### III.

I turn first to the question of plaintiffs' factual and employment settings. There, the operative question is generally whether there is "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws." *Camilotes*, 286 F.R.D. at 346. "Courts typically consider such factors as location, job duties, supervision, and

4

policies or practices that bind the plaintiffs' claims together." *Id.* (collecting cases).

In their complaint, plaintiffs argue that in addition to their PSM duties, they "performed significant hours of non-exempt manual labor and other non-exempt duties typically performed by hourly store associate employees, such as operating the cash registers, bagging groceries, stocking shelves, cutting and arranging flowers, slicing deli products and delivering catering orders to residences and businesses." ECF No. 38 ¶ 14. Deposition evidence, however, reveals significant differences in the degree to which plaintiffs were required to perform non-PSM tasks. Opt-in Plaintiff Ignoffo, for example, testified that he spent a significant portion of his time performing non-PSM "front end" tasks—approximately 50% of his workday on normal weekdays and up to 70% on holidays and weekends. ECF No. 109-3 at 47:1-18, 53:17-54:1. Opt-In Plaintiff Garcia, in contrast, did not testify to performing any "front end" duties at all. *See* ECF No. 109-1 at 87:13-88:10. The other plaintiffs fell somewhere in the middle. *See, e.g.*, ECF No. 109-6 (Haugen Dep.) at 40:11-41:2 (10-20% of time spent on front end tasks); ECF No. 109-11 (Larson Dep.) at 61:16-21 (20% of time); ECF No. 109-7 (Goldston Dep.) at 29:20-31:1 (approximately 40% of time); ECF No. 109-8 (Cunningham Dep.) at 34:1-35:1 (40% of time or more). Accordingly, the evidence suggests that there is no uniform, common policy governing the

5

extent to which PSMs are called away from their normal duties to perform front-end functions. Instead, the practice seems to vary greatly by store and by supervisor.

Plaintiffs also argue that the PSM duties themselves are not administrative in function because they do not involve the exercise of sufficient discretion or independent judgment. *See* ECF No. 38 at ¶¶ 12, 15. But there, too, deposition evidence suggests significant differences between stores. For example, Opt-In Plaintiff Garcia testified that she makes independent decisions regarding employee recruiting, including electing to create promotional flyers, leveraging community connections she has cultivated, and even, on occasion, deciding to throw her own job fairs (separate and apart from company-wide job fairs). ECF No. 109-1 at 57:18-60:17. Opt-In Plaintiff Ignoffo, in contrast, took less recruitment initiative—the "couple" of job fairs he attended tended to be either suggested or set up by recruitment managers. *See* ECF No. 109-3 at 24:14-26:12.

The PSMs also testified that they had varied levels of discretion with regard to job applicant interviews. Opt-In Plaintiff Al Ayed said she mechanically forwarded every candidate "that me[et] the basic qualifications for the job" to her higher-ups for a second interview. ECF No. 109-10 at 115:15-20. Similarly, Opt-In Plaintiff Cunningham advanced every candidate as long as she was not excluded by an answer to the standard interview

6

questions. ECF No. 109-8 at 41:17-43:3. Mr. Ignoffo made no decision at all on whether a candidate would advance—instead, the store director would decide whether an applicant would proceed to a second interview. ECF No. 109-3 at 28:4-32:8. On the other hand, Ms. Garcia only advanced candidates she deemed a "good fit" for the store after the initial interview, and said she had a "whole box" full of paperwork for applicants she declined to push forward. ECF No. 109-1 at 44:24-46:16. Named Plaintiff Haugen also made independent decisions about which applicants to forward onto management, and testified he typically advanced those who "sounded like they were able to communicate and answer the questions in a respectable way." ECF No. 109-6 at 57:17-58:9. Deposition testimony, then, suggests that PSMs do not exercise equivalent levels of discretion and independent judgment when performing key job duties such as recruiting and interviewing.

Attached to their opposition to the instant motion to decertify, plaintiffs submitted a master declaration, signed by 26 plaintiffs, that they offer as evidence that each of the PSMs performed a uniform set of duties. *See* ECF No. 121-1. But the master declaration does not contradict the variations in PSMs' responsibilities apparent from their deposition testimony. The declaration states generally that the PSMs performed a set of listed duties "routinely" or "[a]t some time or another," but also notes that "the amount of time spent on each task is not always

7

identical" between PSMs. *See id.* ¶¶ 3, 5-6. The declaration, therefore, is not probative of which PSM duties were performed frequently or infrequently, or which duties were part of the PSMs' "primary" responsibilities. Nor does the master declaration rebut the areas in which the deposition testimony revealed differences in the PSMs' discretion and initiative, such as with applicant interviews. The declaration states that PSMs used standardized interview question packets, but does not delve into how much discretion PSMs had in interpreting the responses to those questions and advancing applicants in the hiring process. *See id.* ¶ 6.

Plaintiffs also argue that PSMs' duties were dictated by company policy—in particular, they point to the companywide position description, which lists PSMs' "essential responsibilities." *See* ECF No. 121-2. They note also that PSMs were evaluated using the same company "scorecard," and that certain materials, including surveys, training modules, and interview packets, were standardized across stores. These similarities are probative, but not dispositive. Although Mariano's may describe the PSM position consistently, deposition evidence suggests that the daily responsibilities of one store's PSM can differ significantly from those of another. "It is those day-to-day duties on which a proper analysis under the FLSA rests, not merely the parties' characterizations of those duties." *Schaefer-LaRose*,

8

679 F.3d at 580; *see Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 870 (7th Cir. 2008) ("An employee's title is not controlling; courts instead must engage in a case-by-case analysis of the employee's duties and responsibilities."); *see also Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 U.S. Dist. LEXIS 119190, at *14, *27-28 (N.D. Ill. Aug. 27, 2014) (declining to certify FLSA class of "Account Reps" despite "uniform training that Account Reps receive, [defendant's] job description for the position, and the set of performance criteria that [defendant] allegedly uses to evaluate Account Reps" where actual day-to-day duties differed).

Accordingly, I conclude that plaintiffs' disparate factual and employment settings weigh in favor of decertification.

## IV.

The second factor courts consider when evaluating a motion for decertification is "whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff." *Camilotes*, 286 F.R.D. at 345. I conclude that they would.

Most significantly, Mariano's defends against plaintiffs' FLSA claims on the grounds that the administrative exemption applies to exclude PSMs from a right to overtime pay. As noted above, application of the administrative exemption "requires a thorough, fact-intensive analysis," *Schaefer-LaRose*, 679 F.3d at 572, including into the question of the employee's "primary duty."

9

29 C.F.R. § 541.200(a)(2)-(3). "Determination of an employee's primary duty must be based on all the facts in a particular case," but "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(a)-(b). Here, the evidence suggests that PSMs varied significantly in time spent performing different functions of their jobs. Accordingly, the "primary duty" analysis would likely require an individualized inquiry. Mr. Ignoffo, for example, who testified that he spent more than half of his time on non-PSM front-end duties, ECF No. 109-3 at 47:1-18, 53:17-54:1, may have a different "primary duty" than Ms. Garcia, who does not have any front-end responsibilities at all, ECF No. 109-1 at 87:13-88:10. Even for those plaintiffs who did not have significant front-end responsibilities, the PSM duties they performed seemed to vary. For example, the amount of time spent on training employees was different, *compare* ECF No. 109-1 (Garcia Dep.) at 82:5-83:1 (up to 10-15% of time spent on training), *with* ECF No. 109-6 (Haugen Dep.) at 41:6-16 (20% of time spent on training), *and* ECF No. 109-9 (Nieves Dep.) at 51:20-52:6 (70-80% of time spent on training), as was the amount of time spent on hiring and recruiting, *compare* ECF No. 109-6 (Haugen Dep.) at 41:6-18 (20-25% of time spent on hiring process), *with* ECF No. 109-11 (Larson Dep.) at 38:12-16 (35% of time spent on new hire process), *and* ECF No. 109-1 (Garcia Dep.) at 80:4-17 (50% of

10

day or more spent recruiting). In the face of these variations, "determinations about each plaintiff's primary duty must be taken individually." *Hundt*, 294 F.R.D. at 107; *see also Dailey*, 2014 U.S. Dist. LEXIS 119190, at *20-21.

Determining whether the administrative exemption applies would also require an inquiry into whether the plaintiff's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). As seen above, the deposition evidence reveals significant differences in the amount of discretion exercised by PSMs in different stores, especially in the areas of recruiting and interviewing. Accordingly, the question of discretion and independent judgment is also not easily judged on a collective basis.

Because variations in plaintiffs' job duties will require individualized inquiries into whether each plaintiff was subject to the administrative exemption, the second factor favors decertification.

V.

The third and final factor that I must consider is "whether proceeding as a collective would create fairness or procedural benefits." *Hundt*, 294 F.R.D. at 108 (citing *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 731 (N.D. Ill. 2012)). Here, in light of the individualized factual issues that would predominate,

11

the interests of judicial economy would not be served by allowing the claims to proceed on a collective basis. Nor would decertification make it impractical for plaintiffs' FLSA claims to proceed, even according to plaintiffs themselves. Because the case is only of "modest size," they assert, "the case would not necessarily need to proceed at trial with representative testimony"—rather, calling each opt-in plaintiff to the stand "would not be prohibitive." ECF No. 121 at 18.

Plaintiffs suggest that instead of decertifying the class as a whole, the court should create subclasses of similarly situated plaintiffs. ECF No. 121 at 20. But plaintiffs have not proposed what those subclasses would be, nor explained how the subclasses would create fairness or procedural benefits. *See Hundt*, 294 F.R.D. at 108 ("To proceed with subclasses, the plaintiffs must first propose subclasses and explain how subclasses will serve the fairness and procedural concerns of proceeding collectively."). Accordingly, I decline to fashion subclasses on plaintiffs' behalf.

V.

Because all three factors weigh in favor of decertification, the motion to decertify the FLSA collective action [109] is granted.

12

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 5, 2021